UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA ACKERMAN,

       Plaintiff,

v.                                           Case No. 1:23-cv-1321

                                               Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff filed an application for DIB on March 3, 2021, alleging a disability onset date of July 31, 2019. PageID.47. Plaintiff listed ten disabling conditions.[1] PageID.259. Plaintiff completed a master's degree in social work and had past relevant employment as a substance abuse counselor, social worker/case manager, security officer, and motor vehicle assembler. PageID.56-57, 71. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 7, 2023. PageID.47-58. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Plaintiff listed the following: post-traumatic stress disorder; nightmares and insomnia; panic attacks; severe fibromyalgia; irritable bowel syndrome; asthma; migraines; restless leg syndrome; right shoulder and left ankle pain; and, hypothyroidism. PageID.59.

1

## I.  LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).  The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of July 31, 2019, and met the insured status requirements of the Social Security Act through June 30, 2022 (the date last insured). PageID.49. At the second step, the ALJ found that from July 31, 2019, through the date last insured, claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine with history of cervical and lumbar fusion surgeries; migraine headaches; fibromyalgia; asthma; major depressive disorder; generalized anxiety, and post-traumatic stress disorder (PTSD). *Id*. The ALJ found that these "medically determinable impairments significantly limited claimant's ability to perform basic work activities during the timeframe at issue." *Id*. At the third step, the ALJ found that from July 31, 2019, through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.50.

The ALJ decided at the fourth step that:

> From the alleged onset date of July 31, 2019, through the date last insured of June 30, 2022, claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, she could lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. She could sit for six hours in an eight-hour workday, and could stand and/or walk for six hours of an eight hour workday. She could occasionally climb, balance, stoop, kneel, crouch, and/or crawl. She could tolerate a moderate noise intensity as defined in the Selected Characteristics of Occupations to mean a noise level equivalent to that in a business office, grocery store, department store, or light traffic. She could tolerate occasional exposure to extreme temperatures, humidity, and other atmospheric conditions such as fumes, noxious odors, dusts, gases, and poor ventilation. She could sustain concentration necessary to carry out simple instructions and complete simple tasks. She could perform jobs that would allow her to work independently, and that require just occasional direct interactions with supervisors and coworkers and no contact with the public.

4

PageID.52. The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.56.

At the fifth step, the ALJ determined that through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.57-58. Based on the testimony of vocational expert (VE), the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as garment sorter (55,000 jobs), clerical checker (52,000 jobs), and router (50,000 jobs). PageID.58. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 31, 2019 (the alleged onset date) through June 30, 2022 (the date last insured). *Id*.

### III.     DISCUSSION

Plaintiff raised two errors.

**A.     The Commissioner erred as a matter of law by completely failing to evaluate the impact of plaintiff's need for a service dog on her residual functional capacity (RFC) and employability.**

The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations imposed by all of his medically determinable impairments. *See* 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

5

Plaintiff contends that the ALJ did not address her need for a service dog in determining the RFC.  The ALJ's decision noted plaintiff's references to a "service dog".[2]  The parties have not presented any Sixth Circuit authority regarding how an ALJ is supposed to address a claimant's alleged need for a service animal and the Court is aware of none.  *See, e.g., Ashley D. v. Commissioner of Social Security*, No. 22-11344, 2023 WL 5266849 at *9 (July 17, 2023), *R&R adopted*, 2023 WL 5251849 (E.D. Mich. Aug. 15, 2023) (observing that "there is no dispute between the parties concerning an absence of Sixth Circuit authority establishing the exact standard for incorporating a claimant's need for a service animal in her RFC assessment").

In *McGehee v. Berryhill*, 386 F. Supp. 3d 80 (D. Mass. 2019), the Court reviewed district court decisions and concluded that, "[a] claimant's use of a service dog must be considered by the ALJ when there is evidence of a prescription from a medical provider for the dog." *McGehee*, 386 F. Supp. 3d at 87-88.  The undersigned finds this to be a reasonable approach.  Here, plaintiff has not presented evidence of a prescription for a service animal.[3]  Accordingly, plaintiff's claim of error should be denied.

---

[2] For example, when plaintiff stopped working in July 2019 she reportedly argued with her supervisor over having a service dog at work, and in July 2020 reported that she walked her service dog daily.  PageID.53-54.

[3] On the contrary, when plaintiff asked a psychologist to prepare a letter for her to receive a service dog on March 28, 2019, the psychologist (identified as the "writer") questioned whether plaintiff met the legal requirements:

"Writer explained to Veteran that writer was questioning whether Veteran met the legal requirements for a service animal and explained that an individual must have a disability that 'substantially limits one or more major life activities' and the animal must perform a specific task in relation to that limitation.  Writer noted that Veteran's service-connected disability is major depression and that writer does not see how her depression is substantially limiting a major life activity, given that she is successfully working full-time, taking care of her 2-year-old granddaughter and managing a household."

PageID.863-864.

### B. The Commissioner erred as a matter of law by failing to account for all the limitations resulting from plaintiff's migraines in the RFC.

Plaintiff contends that the ALJ did not provide an adequate evaluation of her migraine headaches or the limitations stemming from those headaches. In determining plaintiff's RFC at Step 4, the ALJ addressed the migraine headaches as follows:

> In terms of her *migraines headaches*, claimant described experiencing dizzy spells and vision disturbances. She reportedly spent days in bed due to daily headache pain since leaving the military. Claimant reported her symptoms were triggered by loud noises, such as screaming children. Claimant reported her headaches could also be triggered by lack of sleep, too much sleep, and/or certain smells (3E and 4E). Objectively, studies of the claimant's brain showed scattered periventricular white matter changes that could have been related to migraines (see 2F:395-396). In terms of care, claimant reportedly took headache medications and received Toradol injections (7F). Despite her alleged disabling daily headaches, upon examination, claimant did not appear to be postictal (i.e. tired, confused, nauseas, light sensitive, etc.) (11F:14,48 and 12F:100). Claimant's mental status was usually normal during treatment visits. Evidence supports the environmental limitations in the adopted residual functional capacity, to accommodate the claimant's headache symptoms and to avoid possibly exacerbating them (i.e. noises, smells, etc.).

PageID.54.

The ALJ also evaluated medical opinions which included environmental restrictions related to her migraine headaches:

> In terms of the claimant's physical work capacity, *Mangala Hasanadka, M.D.* (May 2022, 1A) and *Saadat Abbasi, M.D.* (Oct 2022, 4A), non-examining, reviewing medical consultants from the Disability Determination Service (DDS), made prior administrative medical findings at the initial determination and reconsideration [sic] stages of this proceeding. They found that claimant could perform light level work (lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. The also found that she [sic] with postural limitations and environmental restrictions (i.e. extreme temperatures, fumes, poor ventilation, etc.). Dr. Hasandadka [sic] and Dr. Abbasi are acceptable sources for assessment of physical impairments, physical functional limitations, and physical work capacity. These opinions are persuasive because they are supported by the evidence of claimant's treatment for musculoskeletal and respiratory issues during the timeframe at issue. These opinions are consistent with

the results of the claimant's physical examinations that showed the claimant's symptoms were intermittent and her clinical examinations were usually normal (see 2F:197, 7F, and 9F:29).

PageID.55. In this regard, Dr. Hasanadka found that plaintiff required environmental limitations to "avoid asthma and migraine triggers." PageID.104.

In addition, the ALJ considered plaintiff's daily activities[4]:

> The treatment records indicate that claimant engaged in activities that require some exertion. Claimant was her granddaughter's primary care provider (2F:449). Claimant also reported plans to hike in the Appalachian Mountains in June 2020, and she expressed hope that they [sic] gyms would open back up (after COVID pandemic closures) so that she could work out (2F:430). In July 2020, she reported doing activities such as hiking with friends, walking her service dog daily, and walking up to seven miles one to two days per week (2F:407, 412). The degree of activity that she reported to providers contradicts the degree of limitation she described in her testimony at hearing. On the other hand, she did report significant pain and fatigue at these visits, consistent with her testimony (2F:407, 412, 430).

PageID.53. The ALJ also noted that plaintiff could operate a motor vehicle, and "could monitor and supervise her two grandchildren during the day" and was able "to bath, dress, feed, and play with them." PageID.54.

Based on this record, the ALJ adequately evaluated plaintiff's migraine headaches and related limitations. Accordingly, plaintiff's claim should be denied.

### IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated:  November 25, 2024                    /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge

---

[4] *See* 20 C.F.R. § 404.1529 ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities. . .").

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).